*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 17, 2023

Plaintiff-Appellee,

v

No. 354035
Washtenaw Circuit Court

DOMINIQUE RASHARD ROUNTREE,

LC No. 19-000375-FC

Defendant-Appellant.

Before: GLEICHER, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant, Dominique Rashard Rountree, appeals by right his jury convictions of first-degree home invasion, MCL 750.110a(2); being a felon in possession of a firearm (felon-in-possession), MCL 750.224f; being a felon in possession of ammunition (felon-in-possession of ammunition), MCL 750.224f(6); and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve concurrent prison terms of 10 to 30 years for his home-invasion conviction and 40 months to 7 years and 6 months each for his felon-in-possession convictions. The trial court also sentenced defendant to serve 2 years' imprisonment for each his felony-firearm convictions, with 294 days of credit for time already served, to be served concurrent to each other and consecutive to the underlying felonies. On appeal, defendant argues that he did not have a fair trial on a variety of grounds and also challenges his sentences. We affirm defendant's convictions, vacate defendant's sentences, and remand for resentencing.

I. FACTS

A. BACKGROUND

This case arises from a shooting that occurred at a townhouse located in Superior Township in March 2019. Carmen Cruz lived in the townhouse with her three children and Joshua Anderson, the father of two of her children, but she was no longer in a romantic relationship with him. At the time of the shooting, Cruz was dating a man named Brian Jackson. Defendant was also a former intimate partner of Cruz, and he had previously lived with her at the townhouse. On the

-1-

morning in question, defendant parked his SUV in front of the townhouse, then walked directly to the back of the building and entered it through a broken ground level window that had been covered by a piece of wood. A police officer who investigated the scene testified that the wood had been secured to the window and was broken off upon defendant's entry. The circumstances surrounding defendant's entry into the townhouse were hotly contested. It was undisputed that defendant no longer lived at the townhouse. Cruz testified[1] that defendant was not welcome there, and his entry through the window reflected his status as an intruder. Defendant testified that, despite having broken up with Cruz, he continued to be welcome in her home, he went over frequently, he still received his mail there, his state ID was registered at that address, he was previously paroled to that address, and he had permission to come and go as he pleased. Defendant testified that he always entered the townhouse through this window because his copy of the key was lost and that Cruz had also entered through the window multiple times.

After entering the townhouse, defendant let himself into Cruz's bedroom where she was naked in her bed with Brian Jackson. It is undisputed that defendant found himself in a physical altercation with Jackson that ended with Jackson suffering a gunshot wound. The balance of the testimony opened the jury to starkly different sets of potential findings. Cruz testified that she panicked when she saw defendant in the doorway because, while she did not see a gun, he "kept grabbing his waist." She got out of bed and began to frantically search for her clothes. Then, Defendant walked around to the other side of the bed, and while she was looking down trying to find her clothing, Cruz heard the gunshot. Upon hearing the gunshot, Cruz then ran out of the room to check on her children.

Defendant, however, testified that he went to the townhouse to get his mail and did not expect anybody to be home. After realizing that the kids were home, defendant went upstairs and found Cruz in bed with Jackson. Cruz ran out of the room, and defendant noticed that there was a gun and some cash on the window sill next to Jackson. Defendant told Jackson to leave, and when Cruz reentered the room, Jackson "cocked" the gun. Defendant tried to take the gun from Jackson, a struggle ensued, and the gun "went off." The struggle ended when defendant saw that Jackson was bleeding. It is undisputed that Jackson then drove himself to the hospital, that the police subsequently found a gun in a bush outside the townhouse, and that there was surveillance footage of defendant exiting the townhouse and walking to the area where the gun was found. However, defendant could not be seen possessing the gun in this footage.

## B. PROCEDURAL HISTORY

Defendant was charged with assault with intent to murder (AWIM), first-degree home invasion, carrying a concealed weapon, felon-in-possession, felon-in-possession of ammunition, and four counts of felony-firearm. Cruz did not appear at the trial and over defendant's objections, her testimony from the preliminary examination was read into the record at the trial. Defendant

---

[1] As will be discussed in detail below, Cruz's testimony was offered at the preliminary examination, and she did not appear at trial. At the trial, her preliminary examination testimony was read into the record.

was found not guilty of AWIM, carrying a concealed weapon, and the accompanying felony-firearm charges, but he was found guilty of all remaining counts. On appeal, defendant raised claims of ineffective assistance of counsel and moved for a remand to conduct a *Ginther*[2] hearing, predicated primarily on his assertion that his trial attorney should have called numerous witnesses to testify that he had a right to enter the townhouse. The motion was granted, and the trial court conducted a two-day evidentiary hearing, after which he was not granted a new trial. Defendant subsequently filed a motion in this Court seeking a second remand predicated on his assertion that David Goldstein, defendant's attorney, could and should have called Carmen Cruz to testify on his behalf. Included with this motion was an affidavit signed by Cruz, in which she recanted her prior testimony. In this affidavit, Cruz asserted that defendant had a right to enter the townhouse and did so regularly. The motion was granted and Cruz was called to testify at the second evidentiary hearing, but she appeared with an attorney and asserted her fifth amendment rights. Accordingly, she did not offer any useful testimony. The circuit court then denied defendant's request to admit Cruz's affidavit into evidence, and this appeal continued.

The record having been fully developed and the issues having been thoroughly briefed, this case is now before us fully ripe for appellate review.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial attorney—David Goldstein—provided ineffective assistance of counsel. We disagree.

Claims of ineffective assistance of counsel present mixed questions of fact and law. *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018). Factual findings are reviewed for clear error and legal conclusions are reviewed de novo. *Id*.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *Head*, 323 Mich App at 539 (quotation marks, citation, and alteration omitted). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 US at 690. This Court then evaluates "whether the trial attorney's acts or omissions were outside the wide range of professionally competent assistance." *People v Green*, 322 Mich App 676, 684; 913 NW2d 385 (2018) (quotation marks and citation omitted). This Court presumes counsel was effective, and defendant carries a heavy burden to overcome this presumption. *Head*, 323 Mich App at 539.

### A. FAILURE TO CALL WITNESSES

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant argues that Goldstein rendered ineffective assistance by failing to call numerous witnesses to testify that defendant was entitled to enter the townhouse. We disagree.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Counsel's decisions regarding the choice of theories to present are likewise presumed to be sound exercises of trial strategy, *People v Davis*, 250 Mich. App. 357, 368; 649 N.W.2d 94 (2002). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019). "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). However, "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). "[A] sound defense strategy cannot follow an incomplete investigation of the case when the decision to forgo further investigation was not supported by reasonable professional judgment." *Id*. at 55.

## 1. CHRISTINA KUCHARSKI AND JOSHUA ANDERSON

Defendant argues that Goldstein should have called Christina Kucharski, Cruz's mother, and Joshua Anderson to testify that he had the right to enter and be present in the townhouse. At the *Ginther* hearing, Goldstein testified that defendant wanted him to call witnesses who would testify that defendant had permission to be present at Cruz's home, but defendant did not provide any "specific names." They had "talked about a family member," and it may have been Cruz's mother. Goldstein did not believe these witnesses would be helpful:

> I do a lot of drug cases; and in drug cases, there's an issue sometimes of whether an individual lives at a particular location, so you talk about indicia of residents. [sic] And I had that kind of discussion with Mr. Rountree. Did he get his mail there? Was his driver's license—have that address on it or his ID card? Did he have rent receipts? Did he pay rent? Did he keep clothing there? When I had that kind of discussion and I said will this other person, the mother or Carmen's mother, whichever it was, would that person know any of those things? And he said, no; basically he told that person that he lived there. And I explained to him that was not helpful.

Goldstein did not recall ever having personally spoken with Kucharski.

Defendant testified that he gave Goldstein the names of several people who could corroborate his right to be present in the townhouse, including Christina Kucharski. Defendant alleged that Goldstein told him he would call these witnesses, but defendant found out the day of the trial that this was untrue. Kucharski, purportedly, would have testified that defendant regularly entered the townhouse through the window. Kucharski testified at the *Ginther* hearing that she viewed herself as defendant's mother-in-law, and defendant would come and go from the townhouse as he pleased. She asserted that defendant had his own key, received mail there, had the townhouse's address on his driver's license, and paid for rent and utilities. Kucharski testified that anybody, not just defendant, would enter through the window if they were locked out.

-4-

Defendant testified that he likewise gave the name of Joshua Anderson, the father of two of Cruz's children, to Goldstein prior to the trial. Anderson, according to defendant, lived at the townhouse and could have testified that defendant routinely came and went from the townhouse. Anderson testified during the *Ginther* hearing that he did not pay any rent but was nevertheless on Cruz's lease at the townhouse. He further stated that defendant had permission to come over and that he did so even after breaking up with Cruz. Defendant received his mail at the townhouse and even helped babysit. Anderson also testified that it was not unusual for defendant to enter the townhouse through the window.

Whether the testimony by Christina Kucharski and Joshua Anderson offered at the *Ginther* hearing would have been helpful to defendant had it been offered at trial -is immaterial to our analysis because defendant has failed to establish that Goldstein erred by failing to procure it.[3] Goldstein testified that defendant did not supply him with any information identifying these witnesses or suggesting that their testimony would have been helpful. According to Goldstein, defendant only relayed to him that there were "family members," possibly including Cruz's mother, who would testify that defendant told them he was entitled to be at the townhouse. The trial court was in the best position to judge the credibility of Goldstein and defendant, and it resolved the conflict between their versions of events in favor of Goldstein; that resolution is entitled to deference. *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). Accepting Goldstein's version of events, a reasonable lawyer in Goldstein's position would not further investigate these proposed witnesses because there was no reason to believe that they had direct evidence to support defendant's contention, and a reasonable trial lawyer would understand that this testimony—as described to Goldstein by defendant—was likely inadmissible hearsay. See MRE 801(c); MRE 802.

For these reasons, defendant has failed to establish that Goldstein's failure to contact Kucharski and Anderson and call them as witnesses constituted ineffective assistance of counsel.

## 2. CARMEN CRUZ

Defendant argues that Goldstein provided ineffective assistance by failing to investigate Cruz and determine whether she would be ready, willing, and able to testify on defendant's behalf at trial. Defendant supports this argument with an affidavit, signed by Cruz, in which she recants her preliminary examination testimony and asserts that defendant had the right to enter the townhouse. Upon receipt of a motion to remand, to which this affidavit was appended, this Court granted a remand for a second evidentiary hearing for the limited purpose of exploring the availability of Carmen Cruz as a witness for the defense. Cruz, however, appeared at the hearing with counsel, invoked her fifth amendment rights, and declined to offer any meaningful testimony.

As was already discussed, Goldstein had an obligation to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52 (quotation marks and citation omitted). The failure to conduct an adequate investigation is an omission that falls below an objective standard of reasonableness under

---

[3] We do note, however, that the trial court did not find any of this testimony credible.

prevailing professional norms. *Id*. at 52-53. No reasonable person could conclude—on the evidence then before Goldstein—that it fell below an objective standard of reasonableness for him to refrain from interviewing Cruz. The record showed that Cruz told police officers that defendant did not have permission to enter her townhouse. She also testified against defendant at the preliminary examination and repeated that defendant did not have permission to enter her townhouse. Indeed, she testified that they had been broken up for a year. This, combined with the rest of the damaging testimony she offered at the preliminary examination, supported Goldstein's conclusion that she would not offer helpful testimony. Goldstein also testified at the evidentiary hearing and related that the prosecutor informed him about the difficulties with getting Cruz to appear to testify. Additionally, defendant told him that he was confident that Cruz would not appear, and there was evidence presented at the trial suggesting that defendant might have procured Cruz's absence.[4] On the basis of this evidence, it was entirely reasonable for Goldstein to conclude that Cruz had no helpful testimony. It was, therefore, reasonable for him to refrain from investigating further. See *id*.

Furthermore, the record showed that—when properly advised about the ramifications of her testimony—Cruz asserted her privilege under the Fifth Amendment and refused to testify in contradiction to her preliminary examination testimony. Given Cruz's assertion of her privilege at the evidentiary hearing, defendant cannot establish that there was a reasonable probability that, but for Goldstein's failure to investigate, Cruz would have testified at his trial, let alone that she would have testified favorably to defendant. Moreover, Goldstein testified that he typically obtained better results for his clients when alleged victims did not appear at trial, and we do not second guess counsel on issues of trial strategy. *Traver*, 328 Mich App 422-423.[5] Consequently, defendant has not shown that Goldstein's failure, if any, prejudiced him at trial.[6]

---

[4] At the trial, defendant admitted during cross examination that he had spoken on the phone with Cruz "dozens" of times since he was arrested. During these phone calls, defendant instructed Cruz to contact the prosecutor's office and inform them that she did not want to be involved with the case any further and wanted the no-contact order to be lifted.

[5] The effectiveness of defense counsel is not evaluated based on the success or failure of counsel's strategy, *Petri*, 279 Mich App at 412, but nevertheless we note that this strategy was largely successful as defendant was acquitted of the most serious charge.

[6] After Cruz invoked her right to remain silent at the evidentiary hearing, defendant attempted to admit her affidavit into evidence, but it was not admitted because the trial court sustained the prosecution's hearsay objection. Defendant asserts the trial court's failure to admit the affidavit as a separate claim of error. We decline to review the trial court's decision not to admit the affidavit because, even if it had been admitted, it would not have helped defendant establish his claim of ineffective assistance. To reiterate: we review Goldstein's performance based exclusively on the information available to him at the time. Prior to the trial, this affidavit did not exist, and as we discussed above, Goldstein had no reason to believe that attempting to procure Cruz's testimony would be worthwhile.

## B. DEFENDANT'S TESTIMONY

Prior to the trial, defendant told Goldstein that he took the gun from Jackson after the struggle, during which Jackson was shot, and he subsequently threw it behind the townhouse. Defendant argues that Goldstein rendered ineffective assistance of counsel by advising defendant that he should not testify about having ever been in possession of the gun unless specifically asked. Goldstein testified at the *Ginther* hearing that he was concerned about defendant admitting to having had possession of the gun because none of the prosecution's witnesses would be able to testify that defendant shot Jackson. Accordingly, he felt that making such a concession would be self-defeating. It is wholly unclear to us how this testimony could possibly have been helpful to defendant. If anything, testifying that he took possession of the gun after the struggle with Jackson and then underwent steps to hide it from police, in part because "he knew he wasn't allowed to possess firearms,"[7] was an admission of guilt to the felon-in-possession charge. It also could have been used by the prosecution as consciousness-of-guilt evidence in support of the more serious charges. Therefore, assuming *arguendo* that defendant gave this information to Goldstein who advised him not to admit to it on the stand,[8] this did not constitute ineffective assistance of counsel because it would have been a reasonable strategic decision to which we defer. See *Traver*, 328 Mich App 422-423

## C. FAILURE TO REQUEST INSTRUCTIONS

Defendant argues that Goldstein provided ineffective assistance by failing to request several jury instructions. We disagree.

At the conclusion of a trial, the court is required to "instruct the jury as required and appropriate . . ." MCR 2.513(N)(1). Defendant had the right to have "a properly instructed jury consider the evidence against him," and the instructions had to "include all elements of the crime charged . . . and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Ogilvie*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 354355); slip op at 2 (quotation marks and citations omitted). A defendant may advance inconsistent defenses such as accident and self-defense, but there must be support for the instructions. *People v Guajardo*, 300 Mich App 26, 43; 832 NW2d 409 (2013). "[J]ury instructions must not exclude consideration of material issues, defenses, and theories for which there is supporting evidence." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). "In reviewing a trial court's jury instructions, this Court examines the instructions as a whole, and, even if there are some imperfections, there is no basis for reversal if the instructions adequately protected the defendant's rights by fairly presenting to the jury the issues to be tried." *People v Dumas*, 454 Mich 390, 396; 563 NW2d 31 (1997). Put differently, "[e]ven if somewhat imperfect, instructions do not warrant reversal if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Kurr*, 253 Mich App at 327.

---

[7] This is a direct quotation from defendant's Standard 4 brief.

[8] There was no testimony about this particular claim of error at either evidentiary hearing.

## 1. SELF-DEFENSE AND ACCIDENT

Defendant argues that Goldstein should have requested a jury instruction on self-defense or accident.

Goldstein testified at the *Ginther* hearing that he did not recall the specifics of any conversations he may have had with defendant about the possibility of requesting a self-defense instruction. Defendant testified that he was adamant with Goldstein from the case's inception that he was defending himself. However, there was no evidence at trial that would have supported a finding that defendant acted in self-defense. "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Guajardo*, 300 Mich App at 43 (quotation marks and citation omitted). Defendant did not testify that he intentionally shot Jackson; Jackson did not testify; and Cruz testified that she did not see the who fired the gun. Moreover, as Goldstein aptly stated at the evidentiary hearing, it was an important part of the defense to the assault with the intent to murder charge to avoid having defendant testify that he intentionally shot Jackson. Rather, it was Goldstein's strategy to emphasize that defendant did *not* intentionally shoot Jackson, so he could argue defendant did not have the intent necessary for the more serious assault charge or its lesser included offense.

On the other hand, there was evidence that could have supported an accident instruction. An instruction on accident is appropriate when there is evidence that the defendant and his or her victim struggled over a gun and the gun went off accidentally. See *People v Hawthorne*, 474 Mich 174, 179-180; 713 NW2d 724 (2006). Defendant testified that—contrary to Cruz's statement that she saw him grabbing for something at his waist and then heard a shot—he was unarmed when he confronted Cruz and Jackson in Cruz's bedroom. Defendant asserted that Jackson had a gun next to the window and that he grabbed it when defendant entered the bedroom and held it by his side. Defendant said that he told Jackson that he had to leave, and Jackson responded by "cocking" the gun. Defendant tried to take the gun at that point, and they struggled over it. While an accident instruction would have been appropriate, defendant has failed to establish that the outcome of the proceedings would have been different if such an instruction had been offered. The trial court instructed the jury that it had to find that defendant had the specific intent to commit those crimes, which naturally would not be the case had the gun discharged accidentally. See *Id*. at 185 (stating that the failure to give an accident instruction can be harmless when the trial court properly instructs the jury about the specific intent). Additionally, the jury apparently accepted Goldstein's theory of the case and determined that the prosecutor had not established beyond a reasonable doubt that defendant intended to kill Jackson or intended to cause him great bodily harm. Consequently, any error was harmless because the accident instruction plainly applied only to the charges for which defendant was acquitted. See *Id*.

## 2. RIGHT TO ENTER

Defendant argues that Goldstein should have requested instructions clarifying that he could not be convicted of home invasion if he had permission to be at the townhouse or honestly and reasonably believed that he had the right to be there.

-8-

A person commits first-degree home invasion, in relevant part, if he or she "breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault." MCL 750.110a(2). By using the common-law element "breaks and enters," the Legislature incorporated the body of law defining what it means to break and enter. See *People v Riddle*, 467 Mich 116, 125-126; 649 NW2d 30 (2002). Accordingly, the common-law defense of permission applied to the element of breaking and entering. See *Id*. at 126.

The trial court instructed the jury that the prosecutor had to prove, in relevant part, that defendant "broke into a dwelling or entered a dwelling without permission." Notably, the trial court did not instruct the jury using language from the statute concerning "breaking and entering" *or* "entering without permission," which would have suggested to those unfamiliar with the common law that breaking and entering—even with permission—might satisfy the element. Rather, the trial court referred to breaking into a dwelling and entering a dwelling together, which it then followed with the qualifier "without permission." The phrasing of the instruction actually given, although it could have been more clearly stated, indicated that the limiting phrase "without permission" applied in this context to both the act of breaking and the act of entering. Consequently, the instruction put the defense of permission before the jury and protected defendant's rights. See *Dumas*, 454 Mich at 396.

It might have been better practice for Goldstein to have requested a specific instruction informing the jury that a person cannot commit first-degree home invasion if he or she had a good-faith belief that he or she had the right to break or enter the dwelling, but the question is not whether the instruction was perfect—it is whether the instructions, when read as a comprehensive whole, adequately protected defendant's rights. See *People v McFall*, 224 Mich App 403, 412-413; 569 NW2d 828 (1997). A reasonable defense lawyer in Goldstein's position might have felt that the instruction adequately covered the defense under the circumstances. See *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013) ("Failing to request a particular jury instruction can be a matter of trial strategy."). A reasonable defense lawyer may have preferred to keep the emphasis on whether defendant ever had a gun in his possession before the struggle with Jackson. Indeed, the record showed that Goldstein focused his arguments on precisely that; he argued that there was not any credible evidence to establish that defendant committed an assault. He told the jury, for example, that, if it found that the gun accidentally discharged, then it should find defendant not guilty of first-degree home invasion: "If my client did not commit an assault, in other words, if you find that the struggle over the gun caused the gun to discharge accidentally regardless of whose hand was on the gun, regardless of whose hand was on the trigger, it's not an assault, then he's not guilty of" first-degree home invasion. Given the strong evidence that no reasonable person in defendant's position would have a good-faith belief that he had the right to enter into Cruz's townhouse, barge into her bedroom in an intimate moment, and demand that her new boyfriend leave, it was reasonable for Goldstein to focus on the assault charges and the assault element of first-degree home invasion, which could have successfully resulted in an acquittal of all the most serious charges. Consequently, defendant has not shown that Goldstein's failure to request a more accurate or thorough instruction on the defense of permission fell below an objective standard of reasonableness under prevailing professional norms.

3. POSSESSION OF FIREARM

In his Standard 4 brief, defendant argues that Goldstein rendered ineffective assistance by failing to request the trial court to instruct the jury that it was permissible for him to possess a firearm under certain limited circumstances. We disagree.

At trial, defendant testified that he went outside to "look" for a gun—presumably because he did not know where it was—after Jackson left for the hospital. He also testified that he did not "handle" or "use" guns. Despite the testimony he offered while under oath at the trial, defendant subsequently testified at the evidentiary hearing that he told Goldstein he had briefly possessed the gun. He asserts in his Standard 4 brief that he took the gun from Jackson to protect himself and later threw it outside the townhouse because Cruz panicked about the shooting and because he knew he was not supposed to possess a gun. Based on this new version of events, defendant asserts that Goldstein should have requested an instruction on temporary possession of a firearm as a defense to the various firearm charges and that Goldstein erred by instructing him not to admit that he carried the gun unless directly asked.

For the reasons discussed above, if it is true that Goldstein instructed defendant not to testify to having possessed the gun unless directly asked, this was not ineffective assistance. Goldstein also cannot be faulted for declining to request an instruction about temporary possession. This Court has stated that a felon may momentarily possess a firearm, even though contrary to the statutes prohibiting such possession, when compelled by certain circumstances to do so. See *People v Dupree*, 284 Mich App 89, 104-108; 771 NW2d 470 (2009) (opinion by M.J. KELLY, J.). This defense, however, is quite circumscribed and requires evidence that the defendant only possessed the firearm to avoid a threatened harm, did not recklessly or negligently place himself in the situation at issue, had no reasonable opportunity to avoid possessing the firearm, and terminated the possession once the danger had passed. *Id*. at 107-108 (opinion by M.J. KELLY, J.). In this case, there was no trial testimony that defendant possessed the gun and hid it outside. The evidence that he did so depended on inferences drawn from the testimony about where the gun was found and the video evidence. Although this circumstantial evidence might have been sufficient to warrant an instruction to the jury, if requested, see *Ogilvie*, ___ Mich App at ___; slip op at 2, in order to argue it effectively to the jury, Goldstein would have had to address defendant's inconsistent testimony and would have had to concede that there was evidence that defendant carried the gun outside and hid it. The very fact that he took the gun outside permitted an inference that he retained it well past the time when he was plausibly justified in retaining possession and suggested a guilty conscience beyond that for a mere possession offense. Therefore, raising the issue implicated the defense to the more serious charges. An argument concerning such an instruction might even have amounted to a concession to the elements of the very charges for which the instruction was intended to be a defense. Under these circumstances, a defense lawyer in Goldstein's position might reasonably conclude that requesting the instruction was not worth the harm that it might cause to the defense given that he could not effectively argue to the jury how the instruction might apply. Accordingly, defendant has not shown that Goldstein's decision to refrain from requesting an instruction on momentary possession fell below an objective standard of reasonableness under prevailing professional norms.

D. PLEA NEGOTIATIONS

-10-

Defendant argues in his supplemental brief that defense counsel provided ineffective assistance involving his plea negotiations. We disagree.

"As at trial, a defendant is entitled to the effective assistance of counsel in the plea-bargaining process." *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014). In this context, the defendant must still satisfy the test articulated in *Strickland*. *Id*. at 592. During the plea-bargaining process, defense counsel's duty is to "properly advise defendant regarding the nature of the charges or the consequences of the guilty plea and the possible defenses to the charges to which the defendant is pleading guilty, so defendant has the ability to make an intelligent and informed choice from among his alternative courses of action." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020) (quotation marks and citation omitted). An ineffective assistance of counsel claim can be based on the rejection of a plea offer if the rejection is the result of an unprofessional error by defense counsel and if it results in a more severe sentence following a trial. *Lafler v Cooper*, 566 US 156, 166; 132 S Ct 1376; 182 L Ed2d 398 (2012). To establish prejudice, defendant must specifically demonstrate that, but for Goldstein's poor advice, he would have accepted the plea, the prosecution would not have withdrawn the plea, the trial court would have accepted the plea, and he would have received a lesser punishment. *Douglas*, 496 Mich at 592.

Goldstein testified that he could not remember exactly what the prosecution's plea offer was but that it involved "a plea to a felony firearm and a substantive count" and a minimum sentence of "three and a half [years]: two on the felony firearm, one and a half on the substantive count." Goldstein said that it was his habit to inform his clients about the upsides and downsides of going to trial and allow the client to make the final decision. Goldstein testified that he had several conversations with defendant about the plea offer and recalled that defendant was "confident" Cruz would not appear at the trial. Goldstein also knew that there was a possibility that Jackson—the gunshot victim—would not appear. He explained to defendant that he usually obtained better results for his clients when a victim does not appear, that prosecutors sometimes dismiss their charges if a witness does not appear, that there were no indications that the prosecutor in this case would do so, and that the prosecutor might use Cruz's preliminary examination testimony at trial. Defendant, according to Goldstein, rejected the offer because he believed he would prevail at trial. Defendant, however, testified at the hearing that he wanted to accept the plea agreement until Goldstein told him the case would be dismissed if the prosecution's witnesses did not appear and that Goldstein did not explain that Cruz's testimony from the preliminary examination could be used; had he known this, he would have accepted the plea agreement.

On appeal, defendant contends that, because the trial court did not specifically find that Goldstein advised him that the prosecutor could admit Cruz's testimony from the preliminary examination at his trial, the trial court's findings did not establish that Goldstein actually did. It is true that the trial court did not make that exact finding. However, the trial court did find that Goldstein properly advised defendant concerning the plea negotiations. As stated, Goldstein testified that he advised defendant about the risks of proceeding to trial and noted that the prosecutor might try to use Cruz's preliminary examination testimony. He further stated that defendant rejected the offer, despite his advice, because defendant thought he could win. By finding that Goldstein properly advised defendant during the plea negotiations, the trial court impliedly found that defendant was aware of the risks of proceeding, which included the risk that the prosecutor would be able to introduce Cruz's testimony from the preliminary examination. The trial court was in the best position to judge the conflict between the testimony by Goldstein

-11-

and defendant, and it resolved that conflict in favor of Goldstein; we will not second-guess that finding. See *People v White*, 3341 Mich App 144, 150; 951 NW2d 106 (2020) ("This Court defers to the trial court's superior position to evaluate the credibility of witnesses who testified before it."). Consequently, defendant failed to establish that Goldstein's advice fell below an objective standard of reasonableness. See *Douglas*, 496 Mich at 592.

For these reasons, defendant has failed to establish that Goldstein did not provide effective assistance during plea negotiations.

## E.  MISTAKE OF LAW

Defendant argues in his Standard 4 brief that Goldstein did not understand that the prosecutor could establish the assault element of first-degree home invasion by presenting evidence of a simple assault even though the prosecutor did not charge defendant with a simple assault. This contention is unsupported by the record.

To convict defendant of first-degree home invasion, the prosecutor had to prove that he, in relevant part, broke and entered the townhouse without permission, or entered the townhouse without permission, and "at any time while he . . . [was] entering, present in, or exiting the dwelling," committed "a felony, larceny, or assault" while he was either "armed with a dangerous weapon" or while another "person [was] lawfully present." MCL 750.110a(2). The record does not show that Goldstein misunderstood the relevant elements of MCL 750.110a(2), which prevented him from pursing a reasonable trial strategy. Goldstein testified at the evidentiary hearing that it was his "view of the case" that a successful attack on the assault with the intent to murder and its lesser offense would also serve as a defense to the assault element of the home invasion charge. He further testified that he discussed whether the prosecutor could establish the assault element of the home invasion charge with defendant and told defendant that, in his view, any rational jury that acquitted him of the charged assaults would also acquit him of the home invasion. Goldstein also stated that he thought he had "good reason to argue" in his motion for judgment notwithstanding the verdict that, if the jury acquitted defendant of the predicate felony, the first-degree home invasion charge should be dismissed. Goldstein explained that he would not make a statement that the jury had to acquit under those circumstances—only that it "probably" or "should" acquit. In his motion for a directed verdict before the trial court, Goldstein indicated that he knew that the prosecutor had to prove that defendant committed a "specified crime." Notably, he did not state that the prosecutor had to prove a predicate felony.

Goldstein's testimony at the *Ginther* hearing suggested that he was focused on the fact that the prosecutor charged defendant with committing a felony, which would meet the requirement that defendant committed a felony, larceny, or assault while entering, present in, or exiting the townhouse. He also recognized that the assault with the intent to murder and assault with the intent to commit great bodily harm charges necessarily encompassed a simple assault. See *People v Brown*, 267 Mich App 141, 148; 703 NW2d 230 (2005). Goldstein explained that he thought that a defense to the assault charges would serve as well as a defense to the home invasion because it would undermine an essential element of the home invasion charge—namely, whether defendant committed a felony or assault while in the townhouse. As already discussed, that was a rational choice even though it did not ultimately sway the jury. See *People v Stewart*, 219 Mich App 38,

42; 555 NW2d 715 (1996) ("The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel.").

Additionally, as noted, Goldstein argued to the jury that it should acquit defendant of the home invasion charge if it believed that the shooting was an accident. Goldstein could reasonably focus the jury's attention on defendant's version of events, which, if accepted by the jury, would have established that defendant never took any actions that would have placed Jackson in reasonable apprehension of a battery or amounted to an attempt to commit a battery. See *People v Grant*, 211 Mich App 200, 202; 535 NW2d 581 (1995) (stating the elements of a simple assault). Under defendant's version of events, he and Jackson struggled over a gun and the gun accidentally discharged—there was no indication that it was brandished at all. The fact that Goldstein did not anticipate the jury finding that defendant brandished a firearm but did not otherwise have the intent to murder or cause great bodily harm did not establish that his defense strategy was unreasonable.

In conclusion, while Goldstein did not believe a rational jury *would* acquit defendant of AWIM and convict him of first-degree home invasion, nothing in the record suggests that he believed no jury legally could.

## III. EVIDENTIARY ERROR

Defendant argues that the trial court abused its discretion when it prevented him from testifying about statements Jackson and Cruz made when defendant entered the bedroom. We agree. However, this error does not warrant reversal because it was harmless.

Evidentiary challenges are reviewed for abuse of discretion. *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls 'outside the range of principled outcomes. A decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id.* at 251-252 (quotation marks and citation omitted). However, a trial court's interpretation of the rules of evidence is reviewed de novo. *People v Edwards*, 328 Mich App 29, 34; 935 NW2d 419 (2019). A ruling based on an erroneous interpretation of the law is "necessarily an abuse of discretion." *People v Grissom*, 492 Mich 296, 321; 821 NW2d 50 (2012).

Defendant testified that Cruz initially left the bedroom after he entered, that he told Jackson to leave, and that Cruz subsequently returned. Defendant sought admission of his testimony concerning an exchange between Cruz and Jackson, and the court instructed the jury to leave so there could be an offer of proof. Goldstein asked defendant to explain what happened beginning with when Cruz returned to the room:

> *A.* She came back into the—not the house, into the room and said to Mr. Jackson, you just need to leave. And she asked us not to do this here and basically just asked him could he leave.
>
> *Q.* Okay. Then what?
>
> *A.* And then he said what the fuck you mean I got to leave.
>
> *Q.* Okay, then what?

-13-

*A.* He cocked the gun.

*Q.* I'm sorry?

*A.* He said—I said he cocked the gun.

*Q.* Okay. When did he—when did he—when did he actually take the gun?

*A.* He had grabbed the gun as soon as I said that he had to leave and then she came in there she said please don't do this here, you just need to leave, that's when he cocked the gun.

Goldstein argued that the out-of-court statements were being offered purely for contextual reasons, but the court concluded that they were inadmissible hearsay. On appeal, defendant argues that the trial court erred by concluding that these statements were hearsay, and this error deprived him of his constitutional right to present a defense.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). "Hearsay is not admissible except as provided by" the Michigan Rules of Evidence. MRE 802. There were three out-of-court statements that the trial court deemed hearsay: (1) Cruz told Jackson that he needed to leave; (2) Cruz asked defendant and Jackson "not to do this here"; (3) Jackson said "what the fuck you mean I got to leave." None of the statements were hearsay because none of them were assertions. See MRE 801(a). The first two statements were commands, and the third statement was a question; commands and questions are not hearsay. See *People v Jones*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998) (concluding that an out of court statement cannot be hearsay if it "is incapable of being true or false").[9]

However, this error by the trial court does not warrant reversal of defendant's convictions because it was harmless. Defendant argues this was a constitutional error because it deprived him of his right to present a defense. "Few rights are more fundamental than that of an accused to present evidence in his or her own defense." *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). Nonetheless, in this instance this was not a constitutional error because the wrongful exclusion of such insignificant testimony did not deprive defendant of "a meaningful opportunity to present a complete defense." *People v Aspy*, 292 Mich App 36, 49; 808 NW2d 569 (2011) (quotation marks and citation omitted). "[I]t is patent from a review of the trial record that defendant was allowed to present evidence . . . which, if the jury believed, would have provided defendant a complete defense to the charges brought against him." *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012). The defense in this case was that defendant had the right to enter the townhouse, the gun belonged to Jackson, and Jackson initiated the struggle that resulted in the gunshot. Defendant's testimony clearly made these same assertions. The success or failure of his

---

[9] The parties' arguments pertaining to whether the statements were offered "to prove the matter asserted" are irrelevant because nothing was asserted.

defense hinged on whether the jury deemed his testimony credible, and his assertion that Cruz told Jackson to leave would have done little if anything to bolster his credibility. Therefore, this was a non-constitutional, and "a preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009). The above discussion of why the exclusion of this evidence did not deprive defendant of his right to present a defense likewise instructs our conclusion that the error was harmless.

## IV. SENTENCING

### A. HABITUAL OFFENDER ENHANCEMENT

Defendant argues that the trial court enhanced his maximum sentences under MCL 769.10 under the mistaken belief that it did not have the discretion to do otherwise. As the prosecutor concedes on appeal, that was error. See *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005) (stating that whether to apply the habitual offender enhancements is discretionary); see also *People v Green*, 205 Mich App 342, 346; 517 NW2d 782 (1994) (stating that a trial court abuses its discretion when it fails to exercise its discretion in accordance with the law). Accordingly, we vacate the maximum sentences applicable to Defendant's indeterminate sentences and remand for recalculation of the maximum sentences.

### B. USE OF ACQUITTED CONDUCT

Defendant argues in his Standard 4 brief that the trial court improperly considered acquitted conduct when scoring OVs one, two, and three. We disagree.

The trial court's factual findings at sentencing are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.* (quotation marks and citation omitted). Criminal defendants are entitled to a sentence that is based on accurate information and accurate scoring of the sentencing guidelines. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009).

In *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019), our Supreme Court held that "the use of acquitted conduct to sentence a defendant more harshly violates due process . . . ." This Court provided guidance on the application of *Beck* when it decided *People v Brown*, 339 Mich App 411; ___ NW2d ___ (2021). "The *Beck* majority described 'acquitted conduct' as conduct that has been formally charged and specifically adjudicated not guilty by a jury," but this Court stated that there are "several epistemological and practical problems with this definition . . . ." *Id.* at 421 (quotation marks, citation, and alteration omitted). This Court decided to adopt a "rational jury approach" that would focus "on what the parties actually disputed at trial." *Id.* at 423.

This approach moves away from prohibiting any and all facts and circumstances related to any element of the crime, and instead focuses on the key facts and circumstances that the parties argued about during the trial. This approach is similar to the "rational jury" standard used in the double-jeopardy context, which requires examining the record to determine the ground or grounds upon which a rational jury could have acquitted the defendant. Rather than focus on all of the conceivable grounds upon which a jury could have theoretically acquitted the defendant—even those grounds, for example, that were conceded by the defense or otherwise uncontested by the parties—the focus would be on the grounds that the parties actually put in dispute at trial. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

\* \* \*

. . . [U]nder the rational-jury approach, the sentencing court could consider facts and circumstances that were not, in a practical sense, put in dispute at trial, as long as those facts and circumstances were otherwise consistent with the jury's acquittal on a particular charge. Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge. [*Id*. at 423-425 (quotation marks and citations omitted).]

When the rational-jury approach described in *Brown* is applied to the facts of this case, it is clear the court's decisions on the relevant variables did not run afoul of the bar on the consideration of acquitted conduct.

For OV 1, the trial court had to score 25 points if a "firearm was discharged at or toward a human being." MCL 777.31(1)(a). The jury found beyond a reasonable doubt that defendant carried or possessed a firearm during the commission of his home invasion, and whether defendant assaulted or assaulted and battered Jackson was clearly at issue. It was also undisputed that Jackson was shot by the weapon that the jury necessarily found defendant carried or possessed during the commission of the home invasion. The statute's use of passive voice is crucial; MCL 777.31(1)(a) does not require a finding that a particular person caused the firearm to be discharged—rather, it must be scored if the defendant made "use of a weapon" during the commission of an offense and a "firearm was discharged" at a "human being." The evidence concerning the overlapping relevant conduct supported a finding that a firearm "was discharged" toward Jackson. MCL 777.31(1)(a). Therefore, the trial court was not precluded by the jury's acquittals from assigning 25 points under that variable.

The trial court assigned five points under OV 2, which must be done if the trial court found, in relevant part, that defendant "possessed" a firearm during the commission of the home invasion. See MCL 777.32(1)(d). The jury found beyond a reasonable doubt that defendant in fact carried or possessed a gun during the home invasion even though it acquitted him of carrying it concealed. So, it cannot be said that the trial court improperly scored this variable on the basis of acquitted conduct.

-16-

Finally, OV 3 provides that the trial court must assess 25 points if it finds that a victim suffered a "[l]ife threatening" injury during the commission during the commission of the sentencing offense. See MCL 777.33(1)(c). The overwhelming evidence established that Jackson suffered a gunshot wound during the altercation at issue and that he required surgery and intensive care, and defendant does not dispute the trial court's finding that this injury was life threatening. There is no reason why the following cannot all be true: defendant did not intend to murder Jackson; defendant did not conceal a weapon; and Jackson suffered a life threatening injury. Accordingly, defendant's argument that the two acquittals necessarily meant that Jackson did not suffer a life threatening injury is without merit.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant next argues in his Standard 4 brief that there was insufficient evidence to establish that he put anyone in fear of an immediate battery or had the intent to do so, which was an essential element of the home invasion charge. We disagree.

"Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003). "This Court reviews a challenge to the sufficiency of the evidence by examining the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Clark*, 330 Mich App 392, 436; 948 NW2d 604 (2019) (quotation marks and citation omitted). To prove first-degree home invasion in the context of this case, the prosecutor had to prove that defendant committed a felony, larceny, or assault while he was wrongfully present in the townhouse. MCL 750.110a(2). There was no evidence that defendant committed a larceny in the townhouse, and the jury acquitted defendant of the more serious assault charge and its lesser offense, which were felonies. For that reason, defendant asserts that the only remaining possibility for establishing this element of home invasion was simple assault, and he claims that there was no evidence to establish a simple assault. Defendant's argument overlooks the fact that the jury might have concluded that defendant brought the firearm at issue to the townhouse based on Cruz's testimony that Jackson did not own a gun, she saw defendant grabbing at his waist, and she almost immediately heard a gunshot. That evidence, combined with the other evidence, was sufficient to allow the jury to find that defendant committed a felony while in the townhouse—namely, felon-in-possession. See MCL 750.224f(6) (classifying felon-in possession as a felony). As such, the jury was not restricted to finding a simple assault to convict defendant of first-degree home invasion.

## VI. SIMPLE ASSAULT INSTRUCTION

In his Standard 4 brief, defendant raises three claims of error involving the trial court's response to a jury request for a definition of simple assault. Each claim of error is without merit.

During deliberations, the jury requested a definition of simple assault. The trial court and the parties all agreed that the jury should be given the simple assault instruction stated under

-17-

M Crim JI 17.1, [10] and the trial court provided a written copy of that instruction to the jury. The record does not show that the trial court read the instruction to the jury in open court, and, on appeal, defendant argues that this was an error warranting reversal. Our Supreme Court has stated that a trial court must instruct the jury orally in open court. See *Traver*, 502 Mich at 40. However, our Supreme Court also held that defense counsel can waive the right. *Id*. at 40-41. The record clearly demonstrates that Goldstein affirmatively waived defendant's right to have the jury instructed orally in open court and agreed that the court should provide M Crim JI 17.1 in writing. As such, there is no error to review. See *Id*.

Defendant suggests that the trial court may have given M Crim JI 17.2 rather than M Crim JI 17.1 on the basis of statements made by the trial court at a hearing that occurred after trial. The trial court at the later hearing said that it gave the jury an instruction on "simple assault and battery." Defendant claims that, because the trial court did not give the instruction to which Goldstein agreed, the trial court's error can be reviewed. However, the court unambiguously stated on the record that it would provide the jury with M Crim JI 17.1. Even assuming that the trial court's subsequent statement established that the court gave the assault and battery instruction rather than the simple assault instruction, that claim of error would be unpreserved because it was not raised in the trial court, *People v Carines*, 460 Mich 750, 763; 597 NW2d 120 (1999), and defendant cannot establish that this alleged instructional error affected the outcome of the trial. [11]

---

[10] That instruction provides:

(1) The defendant is charged with the crime of assault. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

(2) First, that the defendant either attempted to commit a battery on [name complainant] or did an act that would cause a reasonable person to fear or apprehend an immediate battery. A battery is a forceful, violent, or offensive touching of the person or something closely connected with the person of another.

(3) Second, that the defendant intended either to commit a battery upon [name complainant] or to make [name complainant] reasonably fear an immediate battery. [An assault cannot happen by accident.]

(4) Third, that at the time, the defendant had the ability to commit a battery, appeared to have the ability, or thought [he / she] had the ability.

[11] For similar reasons, defendant's corresponding claim of ineffective assistance of counsel is without merit because we can simply discern no basis upon which to conclude that this instructional issue could have had an impact on the proceedings' outcome. Defendant also maintains that Goldstein should have requested a special instruction telling the jury that it could only find him guilty of first-degree home invasion if it found him guilty of assault with intent to murder or assault with intent to cause great bodily harm. Because such an instruction would have contradicted MCL 750.110a(2), it would have been error for the trial court to give it. Goldstein cannot be faulted for failing to request a special instruction that was contrary to law. See *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).

Indeed, he does not even attempt to do so. Therefore, defendant cannot carry his burden to establish plain error, and we reject this argument.

## VII. NEWLY DISCOVERED EVIDENCE

For the first time on appeal, defendant argues that Cruz's affidavit, which was discussed above, amounts to newly discovered evidence warranting the grant of a new trial. We disagree.

This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial premised on newly discovered evidence. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable outcomes. *Clark*, 330 Mich App at 432. Defendant did not, however, move for a new trial premised on newly discovered evidence and did not assert that argument at the evidentiary hearing; accordingly, this issue is unpreserved. *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Therefore, we review for plain error. See *Carines*, 460 Mich at 763.

"[M]otions for a new trial on the ground of newly-discovered evidence are looked upon with disfavor, and the cases where this court has held that there was an abuse of discretion in denying a motion based on such grounds are few and far between." *People v Rao*, 491 Mich 271, 279-280; 815 NW2d 105 (2012) (quotation marks and citation omitted). There is a four-part test to determine whether a defendant is entitled to a new trial on the basis of newly discovered evidence.

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).]

Defendant bears the burden to establish each part of this test. *Rao*, 491 Mich at 279.

"In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible." *People v Johnson*, 502 Mich 541, 566-567; 918 NW2d 676 (2018). The newly discovered evidence upon which defendant bases his motion for a new trial comes in the form of a recantation. "[W]here newly discovered evidence takes the form of recantation testimony, it is traditionally regarded as suspect and untrustworthy." *People v Canter*, 197 Mich App 550, 559; 496 NW2d 336 (1992). "There is no form of proof so unreliable as recanting testimony. In the popular mind it is often regarded as of great importance. Those experienced in the administration of the criminal law know well its untrustworthy character." *People v Van Den Dreissche*, 233 Mich 38, 46; 206 NW 339 (1925) (quotation marks and citation omitted). For that reason, "[a]s a rule the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured

themselves at the trial." *People v Norfleet*, 317 Mich App 649, 661; 897 NW2d 195 (2016) (quotation marks and citation omitted).[12]

There is nothing about this affidavit making stand apart from those upon which this Court looks with great skepticism. Looking purely at the face of this affidavit, it simply has a list of statements essentially repeating what defendant has been claiming since his conviction.[13] Cruz asserted the reason she testified that she hadn't given permission to defendant to enter her home was "because Dominique did not need me to give permission; he always had that." Cruz offered no other explanation for why she purportedly lied at the preliminary examination nor for why she refused to appear at trial. Additionally, as is discussed above, there was evidence that defendant discouraged Cruz from appearing at trial or otherwise cooperation with the prosecution. It therefore stands to reason that he may also have pressured her to sign this affidavit. Because of the inherit unreliability of recantations, combined with the particular unreliability of this recantation, it does not justify granting defendant a new trial.

## VII. CONCLUSION

We affirm defendant's convictions and vacate his maximum sentences for the home invasion conviction and for the felon-in-possession convictions. We remand this case to the trial court to hold a hearing, at which it will determine whether to enhance the maximum sentences as permitted by MCL 769.10, or retain the applicable statutory maximums. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado

---

[12] Those who have practiced in criminal law would likely attest to the fact that recantations in cases involving intimate partner violence stand out as being particularly suspect.

[13] Cruz asserts that defendant was allowed in the townhouse after they broke up, that he had his mail sent there, that he regularly entered through the basement window without knocking, and that she would have spoken with defendant's attorney had he reached out.